Commonwealth ex rel. Parker, Appellant, *v.* Patton.

Argued June 12, 1973. Before WRIGHT, P. J., WAT-KINS, JACOBS. HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*Eugene A. Kestenbaum,* Assistant Public Defender, for appellant.

*Stephen B. Harris,* First Assistant District Attorney, with him *Kenneth G. Biehn,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., September 19, 1973:

This is an appeal from the Order of the Juvenile Court of Bucks County committing Andrew Parker, juvenile, to the State Correctional Institution at Camp Hill (Camp Hill), on the ground that Camp Hill no longer qualifies as a place for committment of delinquent children under the Juvenile Act, Act of December 6, 1972, P. L.    , No. 333 (11 P.S. 50-101 et seq.) which became effective as of February 6, 1973. The record of this case leaves no doubt that Parker is a

juvenile delinquent and we shall not dwell upon this phase of the case.[1]

The debate that rages over Camp Hill is reminiscent of Mark Twain's observation that, "Everybody talks about the weather, but no one does anything about it." The judges of our Commonwealth fret and worry over the problems of commitment of delinquent juveniles in an institutional facility best able to provide the programs for the rehabilitation of these juveniles and where they are not susceptible to the views and influences of the allegedly more hardened adult criminals. Although with statistics showing more and more that a greater percentage of crimes is being committed by juveniles, it is difficult to say which category of criminals is to be safeguarded from the others. There is no institution presently in existence in Pennsylvania in which these objectives sought by our legislature, courts and by society can be completely and categorically accomplished. Without further legislative assistance in the solution of this problem our courts will continue to be hampered in their efforts to provide the kind of rehabilitation program indicated in the Juvenile Act of 1972, supra. That Act includes among other objectives the supervision, care, and rehabilitation of delinquent juveniles in "a family environment whenever possible." This last phrase is a doleful reminder of the impossibility of achieving this kind of environment in any institutional facility now in existence in Pennsyl-

---

[1] Andrew Parker was born May 26, 1955. He first came to the attention of the Bucks County Juvenile Probation Office on April 17, 1969 on charges of chronic glue sniffing and incorrigibility. From that time to November 16, 1972, he was before juvenile authorities and the court on various charges, including glue sniffing, chronic truancy from school, absenteeism from home, use of narcotics or dangerous drugs, shooting "speed," resisting arrest, burglary, larceny, purse snatching and other crimes. After his last hearing he was committed to Camp Hill on February 2, 1973.

vania. What the law requires the law should provide tools for accomplishing. Section 25 of the Act provides that the delinquent child might be committed to any "special facility for children operated by the Department of Justice." Since there is no other facility in existence under this category except Camp Hill, the Act necessarily refers to Camp Hill. However, it is Section 27 which creates the difficulty facing our courts when considering Camp Hill. This Section 27 of the Juvenile Act provides in part:

"A. A child shall not be committed or transferred to a penal institution or other facility used primarily for the execution of sentences of adults convicted of a crime, unless there is no other appropriate facility available, in which case the child shall be kept separate and apart from such adults at all times."

A "child" within the meaning of the Juvenile Act is a person under the age of 18 years or one under the age of 21 who committed an act of delinquency before he reached the age of 18 years. Juvenile Parker is in this category.

There is no doubt that Camp Hill plays a dual role— one good and one bad. The good is found in the rehabilitation programs for juvenile delinquents[2] and the bad in the intermingling of juveniles and adults convict-

---

[2] Mr. Ernest Patton, Superintendent of Camp Hill, testifying in several cases on this subject, said that the program involves vocational as well as academic training under the supervision of accredited teachers; courses in remedial reading; that it is possible to complete a high school education and obtain a certificate for doing so; that there have been arrangements made with Harrisburg Community College for college credits in English and Mathematics in the past and to be resumed next Fall; that one-third of the resident of Camp Hill are cleared to leave the premises daily for work or training and that some of the boys work in the Bureau of Corrections Office Building beyond the gates with supervision but not under armed guard.

ed of crime. In the present Pennsylvania situation, lacking as we do a better institutional facility or juvenile rehabilitation program than we have at Camp Hill, we could argue needlessly as to whether Camp Hill is primarily a penal institution or a rehabilitation facility. See the case of *Holmes Appeal*, 379 Pa. 599 (1954), cert. denied, 348 U.S. 973 (1955). It is clear from the record in the cases that there are no other more appropriate facilities available in Pennsylvania than those provided at Camp Hill. We must therefore deal with what we have. Until the legislature comes to the rescue in this problem by providing for the establishment of separate institutions for each group, we are required to decide how best to accomplish the results intended by the requirements of Section 27. That section provides that where there are no other appropriate facilities available, a child should be kept separate and apart from such adults at all times, (contemplating thereby that juveniles must remain separated from adults while receiving all their needs, such as sleeping, resting, recreation, academic and vocational training). Therefore, in the absence of separate institutions for juvenile delinquents and adult criminals we direct Camp Hill authorities to provide separate facilities for the needs of the two groups, or to provide for the separate use of the same facilities avoiding at all times any intermingling of the two groups.

These arrangements may be difficult to achieve, but they can and must be done, if the objectives of the Juvenile Act are to be presently realized in Pennsylvania.

Order of the lower court is affirmed.